IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELSIE GRIEGO,

      Plaintiff,

v.                                                  Civil No. 04-411 WJ/RHS

ANTHONY J. PRINCIPI,
Secretary, United States
Department of Veteran Affairs,

      Defendant.

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S**
**MOTION TO DISMISS (Doc. 25) AND**
**MOTION FOR SUMMARY JUDGMENT (Doc. 27)**

THIS MATTER comes before the Court pursuant to Defendant's Motion to Dismiss, or in the Alternative, Motion for Partial Summary Judgment (Doc. 25) (hereinafter First Motion) and Defendant's Motion for Summary Judgment (Doc. 27) (hereinafter Second Motion). Having reviewed the submissions of the parties and being fully advised on the relevant law, I find the motions are well taken in part and will be granted in part.

**BACKGROUND**

Plaintiff filed her Complaint in this action on April 13, 2004. The Complaint alleges Race/National Origin Discrimination in violation of Title VII (Count I), Skin Color Discrimination in violation of Title VII (Count II), Gender Discrimination in violation of Title VII (Count III), Age Discrimination in violation of Title VII (sic) (Count IV), Disability Discrimination in violation of the Rehabilitation Act (Count V), Denial of Reasonable Accommodation in violation of the Rehabilitation Act (Count VI), Retaliation for filing complaints of Race/ National Origin

discrimination in violation of Title VII (Count VII), Retaliation in violation of the Rehabilitation Act (Count VIII), Retaliation for filing complaints of skin color discrimination in violation of Title VII (Count IX), Retaliation for filing complaints of age discrimination in violation of the ADEA (Count X), and Retaliation for filing complaints of gender discrimination in violation of Title VII (Count XI).

Defendant filed its First Motion arguing that Plaintiff failed to timely exhaust her claims and requesting these claims be dismissed. Plaintiff's response contains a confusing litany of wrongs allegedly suffered by Plaintiff during her employment without really addressing the exhaustion issue except to state that "Plaintiff does not dispute that any claim that occurred prior to October 6, 2001 are [sic] barred, but affirmatively states that those issues are not before this Court." See Docket No. 31 p. 11.

Defendant filed its Second Motion as to all of Plaintiff's claims arguing that Plaintiff could not produce evidence in support of a prima facie case on any of her claims. Specifically, Defendant contends that Plaintiff cannot show any evidence that she suffered any adverse employment action to support her claims under Title VII, the ADEA or the Rehabilitation Act. The Second Motion incorporates by reference the undisputed material facts in Defendant's Motion to Dismiss.

Plaintiff's Response to Defendant's Second Motion is a single paragraph stating that Plaintiff does not oppose Defendant's motion because Plaintiff does not allege claims based on the specific adverse actions identified by the Defendant. Plaintiff does not incorporate by reference in her response any documents of record in the case. Thus, she technically offers no evidence in opposition to summary judgment and does not address Defendant's statement of undisputed

material facts incorporated by reference in Defendant's motion for summary judgment. However, Defendant's Reply makes clear that Defendant considers Plaintiff's response to the First Motion to be incorporated and responsive to the Second Motion. Accordingly, the Court will consider the evidence and argument offered by Plaintiff in response to the First Motion when ruling on the Second Motion.

Viewing the evidence in a light most favorable to Plaintiff as the Court must in deciding a motion for summary judgment, the pertinent facts may be summarized as follows:

At all times relevant to this case, Plaintiff was a Registered Nurse with the Veterans Affairs Medical Center in Albuquerque, New Mexico. She was hired as a Staff Nurse/ Quality Assurance Coordinator on June 18, 1989. Due to a reorganization, Plaintiff's organizational unit became Quality Management Service. Qaulity Management Service was disbanded in 1999. While Qaulity Management Service was disbanded, the Performance Improvement Section and the functional equivalent of Plaintiff's position were not discontinued.

Before Qaulity Management Service was disbanded, Plaintiff made several inquiries to determine whether her position was being discontinued, but never received a definitive answer. In light of this, Plaintiff accepted reassignment from the Quality Management Service to Physical Medicine & Rehabilitation Service before the discontinuation of Quality Management Service. Some time after this reassignment, Plaintiff was given some documents found in the trash by a coworker indicating that Plaintiff's position with Quality Management Service had not been targeted for elimination. The functional equivalent of Plaintiff's former position with Quality Management Service is currently filled by a non-Hispanic woman.

Plaintiff's new position involved a research study expected to last 24 months. Plaintiff's

reassignment was to the position of Nurse Research, and the reassignment was effective June 20, 1999.  This research study ended September 30, 2001.

When the research study ended, Plaintiff was reassigned to a Staff Nurse position in the Nursing Service's Spinal Cord Injury (SCI) Unit Effective October 1, 2001.  Plaintiff did not learn of this reassignment until October 1, 2001.  On October 1, 2001, Plaintiff requested by memorandum "Accommodation for Reassignment."  The memorandum consisted of a single sentence, "I am requesting accommodation based on the American with Disability Act, related to assignment to Spinal Cord Injury United or any other nursing unit that requires physical activity such as lifting, carrying, bending, walking or standing for long periods of time."  See Defendant's Exhibit C.  Plaintiff contacted the Office of Resolution Management (ORM) on November 20, 2001, more than 45 days after October 1, 2001.  Plaintiff made other contacts with ORM, but does not specify the reason for these contacts and the relationship these contacts may have with this case.  A document from ORM indicates that prior contacts with ORM were resolved through a statement of understanding signed by Plaintiff on September 20, 2001.

Plaintiff alleges that she made ongoing and repeated requests for accommodation which have all been denied.  She states she has made repeated requests for reassignment to vacant positions for which she was qualified, was not selected for the positions, and the person selected for each position was either younger, male, or non-Hispanic.  She contends that she has been placed in a non-duty, non-pay AWOL status, has been denied extended sick leave that was requested by her doctor, has been denied a promotion, and received a performance evaluation rating her as "satisfactory" instead of her previous rating of "outstanding." According to Plaintiff, Defendant failed to provide performance evaluations for her work from March 2001 through

4

March 2002, required Plaintiff to verify her qualifications through procedures that differed from the procedures required of others, retaliated against her for engaging in protected activity and for opposing hostile working conditions, and violated the Privacy Act of 1973 and HIPAA Federal Regulation by obtaining her medical records without her written consent.  Plaintiff states that Defendant has retaliated against her for engaging in protected activity by using the VA's Local Physical Standards Board to declare that she is not capable of performing her duties, has placed her on AWOL status without taking any action to separate her from her employment but has terminated her federal benefits including her health benefits without benefit of COBRA, has failed to process her requests for assistance in paying for required education while providing assistance to non-Hispanic persons in the same program, and has denied her various awards.  Plaintiff does not specify discrete dates for many of these alleged wrongs except to give a range of dates during which events continued to occur.

Plaintiff's complaint to ORM on November 20, 2001 alleged her claims based on broadly described actions.  These actions were "denial of reasonable accommodation; placement on AWOL status; performance evaluation falsified; non-promotion to Nurse IV; step increases withheld; denial of promotions; falsification of information to NM Dept. of Labor, Denial of Training."  See Defendant's Exhibit C.  In an Amended & Corrected letter, the ORM clarified the dates of discrete events including updates as follows:

1. October 1, 2001 refusing to reassign Plaintiff from the Spinal Cord Unit.
2. July 24, 2001 notification that Plaintiff was not selected for a position as Health Systems Specialist No. 408.
3. July 20, 2001 notification that Plaintiff was not selected for position as Supervisory Management & Program Analyst No. 406.
4. September 24, 2001 notification that Plaintiff was not selected for Health Systems Specialist No. 603.

5

5. Placed on AWOL status since October 1, 2001 with resulting negative impact on retirement, health and life insurance benefits.
6. October 3, 2001 required to have doctor produce CA-17.
7. October 12, 2001 required to have doctor produce CA-17.
8. November 20, 2001 required to have doctor produce CA-17.
9. December 2001 agency requested and received Plaintiff's medical records without written consent.
10. March 24, 2001 - withholding of in-grade increase
11. November 2001 - Plaintiff withdrew from a training program approved by agency in April 2001 because agency did not provide Plaintiff access to intranet/vista from her home.
12. 1998 - Plaintiff incurred $30,000 in debt for MSN (Master's of Science in Nursing). Agency was supposed to pay for this and did pay for others in the program, but did not pay Plaintiff's.
13. 2001 - Plaintiff did not receive $2500 annual award based on her membership in Sigma Theta Tau International Honor Society.
14. 2002 - Plaintiff did not receive $2500 annual award based on membership in Sigma Theta Tau International Honor Society.
15. 1997 to 2002 - denied approximately $13,000 in award money.
16. 1998 denied award money for an April 1998 Journal Publication.
17. March 28, 2002 proficiency report contained no rating and no narrative.
18. April 3, 2002, failed to use Nursing Qualification Standards to evaluate Plaintiff's performance.
19. August 22, 2000 Performance evaluation was rated only as satisfactory.
20. October 1, 2001 wages withheld until November 23, 2001.
21. April 29, 2002 proposed to change Plaintiff's status from AWOL to LWOP
22. August 2001 Plaintiff was expected to cover for coworkers while they took two hour lunches.
23. June 2000 denied promotion to Nurse IV.
24. April 2002 denied promotion
25. At an unknown time prior to November 2001, the agency made statements that interfered with Plaintiff's efforts to obtain unemployment compensation, but Plaintiff did receive benefits in November 2001.
26. April 2002, Physical Standards Board convened without permitting Plaintiff to be present.
27. July 2000, Plaintiff was denied an extension of sick leave.
28. August 2001, exposure to asbestos.

See Defendant's Exhibit E.

**LEGAL STANDARD**

Summary judgment is properly regarded not as a procedural short cut, but rather as an

integral part of the Federal Rules as a whole, which are designed "to secure a just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Under Fed. R, Civ. P. 56(c), the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. With or without supporting affidavits, the movant may meet its Rule 56 burden by pointing out to the court that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23; Lujan v. National Wildlife Federation, 497 U.S. 871, 884-5 (1990).

    Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-7 (1986). On summary judgment, the court must view the evidence in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court, however, cannot assume that a disputed issue of material fact exists if there are insufficient facts to support the non-movant's allegations. Lujan, 497 U.S. at 888. By its terms, Rule 56(c) provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 248-49. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

The non-movant, moreover, cannot satisfy its burden with "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, "conclusory allegations," Lujan, 497 U.S. at 888, unsubstantiated assertions, Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995), or the "mere existence of a scintilla of evidence, in support of the [nonmoving party's] position," Anderson, 477 U.S. at 252. To meet its Rule 56 burden, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. If the nonmovant fails to show that there is genuine issue as to any material fact, the movant is entitled to summary judgment as a matter of law. Celotex, 477 U.S. at 322.

**DISCUSSION**

I.    DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT (FIRST MOTION)

A federal employee bringing claims of discrimination under Title VII, the ADEA or the Rehabilitation Act who chooses to pursue an administrative remedy must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 CFR § 1614.105(a)(1). Defendant argues that Plaintiff's claims are barred because Plaintiff did not initiate contact with a Counselor at ORM within 45 days of the alleged discriminatory acts.

Plaintiff concedes that, for purposes of her present claims, she initiated contact with a Counselor on November 20, 2001. Additionally, "Plaintiff does not dispute that any claim that occurred prior to October 6, 2001 are [sic] barred, but affirmatively states that those issues are

not before this Court. For the reasons stated herein, the Defendant's motion should be granted only to the extent that it seeks dismissal of discrete acts prior to October 6, 2001." See Docket No. 31 p. 11. Plaintiff asserts that she is not claiming that her reassignment to the Spinal Cord Unit was an actionable event; rather the refusal of Defendant to accommodate her disability by moving her out of the Spinal Cord Unit was actionable. Another asserted basis for Plaintiff's claims is Defendant's placement of Plaintiff on AWOL status.

In reply, Defendant urges that Plaintiff was constructively aware on October 1, 2001, the same date she requested accommodation, that her request would be denied and, therefore, she did not make contact with a Counselor within 45 days of the denial of the request for accommodation.

The Court concludes that, by agreement of the parties, no events that occurred prior to October 6, 2001 can form the basis of any of Plaintiff's claims. This includes but is not limited to all of Plaintiff's allegations concerning Plaintiff's former position with Quality Management Service not having been discontinued, her allegations regarding denial of promotions prior to October 6, 2001, her allegations regarding performance evaluations prior to October 6, 2001, and any other event that occurred prior to October 6, 2001.

The Court notes that Plaintiff uses the phrase "discrete acts" in conceding that none of the events prior to October 6, 2001 are actionable. This phrase might imply that Plaintiff's claims are based in part on nondiscrete acts. The Court also notes that Plaintiff's response to First Motion argues that Plaintiff was retaliated against for opposing a hostile work environment. It is clear from the pleadings in this case that Plaintiff has not alleged a hostile work environment claim, and at this late stage of litigation she will not be permitted to reformulate her theory of the case to

9

include such a claim. Accordingly, there is no amorphous, nondiscrete act or series of acts that will form the basis of Plaintiff's claims. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

A determination of when Plaintiff was denied accommodation, when Plaintiff was placed on AWOL status, and likely a host of other details must wait for another day. However, to the extent Defendant seeks dismissal of, or alternatively, summary judgment on claims based on events occurring before October 6, 2001, the motion is granted.

II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (SECOND MOTION)

Defendant's Second Motion argues that Defendant is entitled to summary judgment on Plaintiff's claims because Plaintiff cannot make a prima facie case for any of her claims. In making this argument, Defendant notes that the McDonnell Douglas burden shifting framework applies to claims of discrimination and retaliation under Title VII, the Rehabilitation Act and the ADEA. Defendant then contends that Plaintiff cannot show the adverse action necessary to make a prima facie showing on any of these claims.

As already noted, Plaintiff's Complaint alleges claims for discrimination and retaliation under Title VII, the Rehabilitation Act and the ADEA. See Complaint Counts I, II, III, IV, V, VII, VIII, IX, X, and XI. Thus, if Plaintiff fails to show a disputed issue of material fact with regard to some adverse action to show a prima facie case with regard to each of these, Defendants are entitled to summary judgment with regard to each of these claims.

Defendant's motion contends that Plaintiff cannot make a prima facie showing on any of these claims because she cannot come forward with any evidence of an adverse action to make a prima facie showing. Defendant then anticipates those adverse actions he believes Plaintiff will

attempt to show and argues that they are not adverse.  Defendant urges that Plaintiff's allegations that she was denied monetary awards, that she was denied training opportunities, and allegations concerning Plaintiff's proficiency ratings on her performance reviews are not adverse employment actions.

As previously noted, Plaintiff's response to the First Motion is a single paragraph.  In this single paragraph, Plaintiff concedes that the specific adverse actions addressed in Defendant's brief are not adverse actions.  However, the Court, looking at Plaintiff's Response to the First Motion, cannot say that Plaintiff has failed to show any adverse action toward a prima facie showing on her claims.  Accordingly, Defendant's Second Motion will be granted, but only to the extent Plaintiff's prima facie case of discrimination or retaliation under Title VII, the ADEA or the Rehabilitation Act relies on the specific acts outlined in Defendant's Second Motion.

As an aside, the Court notes that Plaintiff's Complaint alleges a claim of Denial of Reasonable Accommodation in violation of the Rehabilitation Act in Count VI, and this claim is not analyzed under the McDonnell Douglas burden shifting framework.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999); Pond v. Michelin North America, Inc., 183 F.3d 592, 592 (7th Cir. 1999); Weigel v. Target Stores, 122 F.3d 461, 465 (7th Cir. 1997).  Thus, even if the Court had granted Defendant's Second Motion in its entirety, it would not dispose of Plaintiff's claim based on a denial of reasonable accommodation.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 25) is hereby GRANTED IN PART in that Judgment is granted in favor of Defendant to the extent that Plaintiff's claims are based on events

that occurred prior to October 6, 2001.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 27) is hereby GRANTED IN PART in that Judgment is granted in favor of Defendant to the extent that Plaintiff's claims are based on denial of monetary awards, denial of training opportunities or Plaintiff's proficiency ratings on her performance reviews as being adverse employment actions.

_____
UNITED STATES DISTRICT JUDGE